UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEVEN WAYNE PRATT,

      Petitioner,

v.                                                    Case No.  3:16cv267-LC-CJK

JULIE L. JONES,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 22 (answer); Doc. 13 (exhibits)).  Petitioner replied.  (Doc. 26).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to federal habeas relief.

BACKGROUND FACTS AND PROCEDURAL HISTORY

On May 1, 2005, petitioner murdered Patricia Findley by stabbing her multiple times and slitting her throat.  Petitioner then wrapped Ms. Findley's body

in a blanket, placed her in a shopping cart, secured her body inside the cart with wire, and weighted the cart with concrete blocks and stones.  Not quite done yet, petitioner pushed the shopping cart, with Ms. Findley's body inside, to the Navy Point Sunset Bridge which spans Bayou Grande, and heaved the cart into the water from the bridge.  Ms. Findley's body was found floating in Bayou Grande on May 6, 2005. (Doc. 13, Ex. A, pp. 4-5).[1]  Both petitioner and his co-defendant, a juvenile, confessed to the murder.  (*Id*.; *see also* Ex. A, p. 93).  Petitioner's co-defendant planned to testify for the State.  (Ex. H, pp. 213, 222).  The State also had physical evidence linking petitioner to the crime.  (*Id*., p. 222).

On June 24, 2005, petitioner was indicted in Escambia County Circuit Court Case No. 2005-CF-2525, with first degree premeditated murder.  (Ex. A, pp. 2-3). On September 1, 2006, petitioner entered a counseled, negotiated plea of guilty to the lesser-included offense of second degree murder, with sentence to be determined by the court.  (Ex. A, pp. 47-50 (plea agreement), pp. 80-99 (plea hearing transcript)). The trial court found petitioner's plea knowingly and voluntarily given, accepted the plea and set the matter for a sentencing hearing.  (Ex. A, pp. 80-99).  After hearing,

---

[1] References to exhibits are those provided at Doc. 13.  Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom-most center of the page.

the trial court sentenced petitioner to natural life in prison. (Ex. A, pp. 53-59 (judgment); pp. 100-56 (sentencing hearing transcript)). Judgment was rendered November 30, 2006. (Ex. A, pp. 53-59). The Florida First District Court of Appeal (First DCA) affirmed on April 8, 2009, per curiam and without opinion. *Pratt v. State*, 6 So.3d 611 (Fla. 1st DCA 2009) (Table) (copy at Ex. C).

On May 19, 2009, petitioner filed a *pro se* motion for reduction or modification of sentence under Florida Rule of Criminal Procedure 3.800(c). (Ex. E). The sentencing court denied the motion on August 21, 2009. (Ex. G).

On May 4, 2010, petitioner filed a *pro se* motio87n for postconviction relief under Florida Rule of Criminal Procedure 3.850, (Ex. H, pp. 36-55), which he twice amended, (*id.*, pp. 61-83, 123-62). The state circuit court granted an evidentiary hearing and appointed postconviction counsel. (*Id.*, pp. 199-200). After hearing, the court denied relief. (*Id.*, pp. 201-45 (evidentiary hearing transcript), pp. 246-90 (order denying postconviction relief with attachments)). The First DCA affirmed per curiam without opinion. *Pratt v. State*, 185 So. 3d 1238 (Fla. 1st DCA 2016) (Table) (copy at Ex. L). The mandate issued March 15, 2016. (Ex. M).

Petitioner filed his federal habeas petition on June 7, 2016. (Doc. 1). Petitioner claims his guilty plea was involuntary due to trial counsel's ineffective

assistance in the following respects: (1) counsel misadvised him that he would receive no more than 25 years in prison; (2) counsel failed to file a motion to suppress a post-*Miranda* confession to police; (3) counsel failed to investigate the availability of a "mere presence" defense; and (4) counsel failed to investigate petitioner's competence at the time of his plea and his sanity at the time of the murder. (*Id.*). Respondent asserts that petitioner is not entitled to habeas relief because he fails to meet 28 U.S.C. § 2254(d)'s demanding standard. (Doc. 22).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[2]   Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."   *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).   The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.   *See Thaler v. Haynes*, 559 U.S. 43,

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).   The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this

Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954.  Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## DISCUSSION

Ground One       "Defense Counsel was ineffective for misrepresenting the amount of time the Petitioner would be sentenced to under the plea, resulting in an unknowing and involuntary plea."  (Doc. 1, p. 8).

Petitioner alleges that his plea was induced by counsel's assurance that "based on his age, mental health issues, and lack of any significant prior criminal history, Pratt would receive no more than 25 years prison under the open plea deal."  (Doc. 1, p. 8).  The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation.  (Doc. 1, p. 8; Doc. 22, pp. 16-18).  The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

    i.    Guilty Plea Challenges

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 36-37 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "Once a plea of guilty [or no contest] has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

This waiver includes claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970) (holding that the assistance of counsel received by a defendant is relevant to the question of whether the defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and

understanding); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (holding that by pleading guilty, defendant waived ineffective assistance of counsel claim involving pre-plea issues, where claim was not about defendant's decision to plead guilty). The Supreme Court elaborated in *Tollett v. Henderson*, 411 U.S. 258 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.* at 267.

The advantages of entering a plea may only be secured "if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Id.*

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong

> presumption of verity.   The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted).   "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place."  *Premo v. Moore*, 562 U.S. 115, 132 (2011).

### ii.   Ineffective Assistance of Counsel Claims

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel was ineffective during the plea process.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel). The petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.   The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

'*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result.  *See Strickland*, 466 U.S. at 694.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.*  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.    Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption, described by the Supreme Court as

follows: "We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

The state circuit court in this case utilized the *Strickland* standard, (Ex. H, pp. 246-47), and rejected petitioner's claim for these reasons:

> Defendant claims that counsel "coerced" him into entering the plea by telling Defendant that he would receive a sentence of no more than 25 years. Defendant further claims that if he thought that he would receive a life sentence, he would have demanded a trial, but counsel assured him that the sentence would not be longer than 25 years.

> First, "[a]n allegation that a plea was involuntary or was based on a misunderstanding or mistake can be refuted by a written plea agreement or plea transcript which conclusively establishes the defendant's understanding and that the plea was not coerced." Montgomery v. State, 615 So. 2d 226, 227 (Fla. 5th DCA 1993); see also Young v. State, 789 So. 2d 1160, 1161 (Fla. 5th DCA 2001).

> The record reflects that at the time Defendant entered his plea, the Court confirmed that Defendant had read and understood the written plea agreement form, and that Defendant was aware that he was facing a maximum possible sentence of life in prison. The Court also asked defendant if "anybody promised you that they know what sentence I will impose?" Defendant responded that no one had. The Court found that Defendant's plea was entered "freely, knowingly and voluntarily."

> Additionally, the Court convened an evidentiary hearing on this claim, at which Defendant was present and represented by counsel. At the hearing, Defendant's trial counsel, George Harry Stopp, testified

that he made it "very clear" to Defendant that his sentence could be anything between 20 years and life in prison, and that counsel had no way of knowing what the sentence would be due to the fact that the sentence was at the Court's discretion. In fact, Defendant testified at the hearing that Mr. Stopp did not promise Defendant any particular sentence, but instead advised him that "I should receive no more than 25 years based upon my age and other mitigating factors."

The Court finds Mr. Stopp to be credible and finds that Mr. Stopp advised Defendant of his potential sentence up to life in prison. Counsel may have advised Defendant as to the probable sentence that he would receive based on his own assessment of the case. However, the Court made it clear to Defendant at the time that he entered his plea he was not guaranteed any particular sentence. A defendant cannot reasonably rely on his lawyer's advice if the court informs him during the plea colloquy to the contrary. See Scheele v. State, 952 So. 2d 782, 785 (Fla. 4th DCA 2007) ("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences.")[.] Defendant is not entitled to relief on this claim.

(Ex. H, pp. 248-49) (footnotes omitted).

This court defers to the state court's factual findings, including its credibility determinations. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). The court in *Consalvo* explained:

Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court,

> but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Id.* at 845. Petitioner has not overcome the presumption of correctness by clear and convincing evidence.

The state court's decision was not "contrary to" clearly established federal law, because the state court applied the appropriate standard as identified by the Supreme Court in *Strickland*, and there is no Supreme Court case with materially indistinguishable facts dictating a different outcome than the state court reached. The state court's ruling was not an "unreasonable application" of *Strickland*, given the state court's factual findings and the evidence in the record demonstrating that petitioner knew at the time he entered his guilty plea that he could get anywhere between 246 months to life in prison. Both trial counsel and the court informed petitioner he could be sentenced to life. (Ex. H, pp. 206-08, 216-17, 220-21 (trial counsel's evidentiary hearing testimony); Ex. A, pp. 89-96 (plea colloquy)). Petitioner acknowledged in his written plea agreement that "my attorney, the Court and the prosecutor have not made any promises nor have I relied on any

representations as to actual time I would serve in entering this plea agreement if I were to be incarcerated under the terms of the agreement." (Ex. A, p. 47). Petitioner acknowledged during the plea colloquy that no one promised him that they knew what sentence the court would impose. (Ex. A, pp. 91-92). Petitioner is not entitled to habeas relief on Ground One.

Ground Two        "Defense Counsel was ineffective for not filing a *Motion to Suppress* Pratt's taped statements made to police at the time of his arrest, and Pratt would have gone to trial had those statements been suppressed." (Doc. 1, p. 12).

Petitioner alleges his trial counsel was ineffective for failing to file a motion to suppress his post-*Miranda* statements to police on the ground that they were involuntary due to his intoxication. (Doc. 1, p. 12). The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 12; Doc. 22, pp. 24-26). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

A.    Clearly Established Federal Law

The clearly established federal law governing this claim is set forth above.

B.    Review of State Court's Decision

Because the First DCA's decision was unexplained, the court presumes the

First DCA adopted the state circuit court's reasoning.  The state circuit court utilized

the *Strickland* standard, (Ex. H, pp. 246-47), and rejected petitioner's claim for these

reasons:

> Defendant claims that counsel should have filed a motion to suppress Defendant's confession to police on the basis that Defendant did not knowingly waive his Miranda rights due to the fact that he was highly intoxicated.

> "[T]he drunken condition of an accused when making a confession, *unless such drunkenness goes to the extent of mania*, does not affect the admissibility in evidence of such confession." <u>Walker v. State</u>, 88 So. 3d 128, 136 (Fla. 2012) quoting <u>Lindsey v. State</u>, 66 Fla. 341, 63 So. 832, 833 (1913) (internal quotations omitted and emphasis added).  The Court also granted an evidentiary hearing on this claim.

> At the hearing, Mr. Stopp testified that Defendant had never told counsel that he [sic] when he was questioned by police that he was intoxicated to the extent that he did not understand what he was doing. Mr. Stopp also emphasized that Defendant never wanted counsel to challenge his case: "I would have asked him if he wanted me to go challenge his statements.  Because again, he had said from the beginning, I want to plead this out."  Mr. Stopp went on to testify that in his experience, if a client is hoping for a favorable plea offer, it is better not to "stir the State up," by filing a motion to suppress, for example.

> Defendant has failed to prove that a motion to suppress his statement on this basis would have been successful.FN11  Defendant himself testified at the hearing that after having reviewed the video of

his statement to police, counsel told him that Defendant did not look "impaired enough to want to pursue suppressing the video." Accordingly, it appears that counsel investigated the motion and made a reasonable professional decision not to file it. Combined with the strategic considerations during plea negotiations, the Court finds that counsel was not deficient for failing to file such a motion. Defendant is not entitled to relief on this claim.

> FN11  At the hearing, Defendant's postconviction counsel alluded to having viewed a copy of the police video with Defendant, but the video was not played at the hearing or offered into evidence.

(Ex. H, pp. 251-52) (footnote omitted).

Again, this court defers to the state court's credibility determinations. The state court credited trial counsel's testimony over petitioner's testimony. Trial counsel testified that he reviewed the State's discovery, including petitioner's statements to police; that petitioner did not tell counsel he was intoxicated at the time he confessed; that counsel was not aware of any basis to challenge petitioner's confession; that had counsel learned of any basis to challenge the confession he would have consulted with petitioner; and that petitioner made it clear from the beginning that his sole desire was to strike a plea deal – he had no desire to go to trial or to challenge the State's case in any way. (Ex. H, pp. 208-22). Counsel's testimony, alone, provides a reasonable basis to conclude that counsel's failure to pursue a motion to suppress was reasonable. *See Strickland*, 466 U.S. at 691 ("The

reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or action.  Counsel's actions are usually based . . . on information supplied by the defendant."); *Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel."); *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate."); *see also Funchess v. Wainwright*, 772 F.2d 683, 689-90 (11th Cir. 1985) (finding counsel was not ineffective for failing to investigate a defendant's prior mental health difficulties because he never told counsel of any problems and the competency evaluation did not indicate that any problems existed).

Moreover, as the circuit court observed, even according to petitioner's own version of events – that counsel reviewed a video recording of petitioner's confession, considered petitioner's claim of intoxication, and informed petitioner he "didn't look drunk enough or impaired enough to want to pursue suppressing the video", (Ex. H, p. 231) – all events trial counsel testified he did not recall happening – petitioner's version confirmed that counsel investigated petitioner's confession

and determined there was no basis to challenge it.  At the postconviction evidentiary

hearing, petitioner did not attempt to discredit counsel's alleged assessment of the

video by offering it into evidence, despite its availability.  (*See* Ex. H, pp. 218-19,

229).  The state court's conclusion that "it appears that counsel investigated the

motion [to suppress] and made a reasonable professional decision not to file it[,]"

(Ex. H, p. 252), was a reasonable application of *Strickland*.  *See Blankenship v.

McNeil*, 542 F.3d 1253, 1274 (11th Cir. 2008) ("We reiterate that in habeas

proceedings, unlike direct appeals, the petitioner bears the burden of establishing his

right to relief; [the petitioner] must prove the facts necessary to demonstrate his

counsel's performance was constitutionally defective.  Because of this burden, when

the evidence is unclear or counsel cannot recall specifics about his actions due to the

passage of time and faded memory, we presume counsel performed reasonably and

exercised reasonable professional judgment." (citations omitted)).

The state court's rejection of petitioner's claim is consistent with clearly

established federal law and is based on a reasonable determination of the facts.

Petitioner is not entitled to habeas relief on Ground Two.

Ground Three          "Defense Counsel was ineffective for not investigating Pratt's viable 'mere presence' defense, and Pratt would have gone to trial had he known that the independent acts of his co-Defendant in the crime did not make the Petitioner a principal." (Doc. 1, p. 16).

Petitioner claims trial counsel was ineffective for failing to investigate the availability of a "mere presence" defense. (Doc. 1, p. 16). Petitioner describes his proposed defense as follows:

> [I]t was his [petitioner's] theory that the co-Defendant committed the murder and any underlying felony, and that the Petitioner was just a witness to the co-Defendant's actions. Pratt agreed that he may have been guilty of assisting with the hiding and disposing of the victim's body as an "accessory after the fact," but his trial exposure for such allegation was severely less than the pending murder charge. As he had explained his role in the incident pre-trial to defense counsel, Pratt averred that had he known that his actions and mere presence did not automatically make him a principal to Smith's commission of murder, Pratt would have opted for trial and not entered into an open plea[.]

(Doc. 1, pp. 16-17). The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 16; Doc. 22, pp. 31-33). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

A.    Clearly Established Federal Law

The clearly established federal law governing this claim is set forth above.

B.    Review of State Court's Decision

Because the First DCA's decision was unexplained, the court presumes the
First DCA adopted the state circuit court's reasoning.  The state circuit court utilized
the *Strickland* standard, (Ex. H, pp. 246-47), and denied relief for these reasons:

> Defendant claims that counsel should have "explored" a defense
> based on Defendant's allegation that Defendant was "a mere witness to
> his co-defendant's acts."  The Court granted an evidentiary hearing on
> this claim.
>
> At the hearing, Mr. Stopp explained that from the time that he
> first met Defendant, that Defendant had "made it clear to me that he did
> not want to go to trial, that he wanted to plead this thing out and get on
> down the road."  Furthermore, Mr. Stopp testified that Defendant had
> never said anything about his co-defendant committing the stabbing,
> and Defendant being a mere witness.  Again, the Court finds Mr. Stopp
> credible and does not find that he was deficient for failing to investigate
> this defense, particularly because he described Defendant as "adamant"
> about entering a plea.  Moreover, the record reflects that Defendant
> admitted committing the murder to police.  Defendant is not entitled to
> relief.

(Ex. H, pp. 250-51) (footnote omitted).

This court defers to the state court's credibility determinations and reliance on
trial counsel's testimony.  Nothing about the state court's conclusion is inconsistent
with Supreme Court precedent or is otherwise objectively unreasonable.  The
decision is supported by the record and *Strickland* itself.  Petitioner, who had first-
hand knowledge of the alleged facts underlying his "mere presence" defense, did not

communicate those facts to trial counsel or give trial counsel any reason to investigate the possibility of a "mere presence" defense. Petitioner's assertion that he had a viable "mere presence" defense is even more incredible given his statements to police describing his active involvement in stabbing the victim, and given his pre-trial statements to inmates at the Escambia County Jail describing in graphic detail the sensation of stabbing the knife into Ms. Findley's body – statements that were so disturbing to the inmates that an altercation ensued, jail officials reported the incident to the State Attorney's Office, an investigator with the State Attorney's Office reported the incident to defense counsel, and defense counsel drove to the jail to investigate the incident and advise petitioner to stop making inculpatory statements. (Ex. A, pp. 4-5 (arrest report forming the factual basis for petitioner's plea), pp. 49-50 (written plea agreement stipulating to factual basis), p. 93 (prosecutor's statement that both petitioner and his co-defendant confessed), p. 96 (prosecutor's proffer of factual basis at plea hearing); Ex. H, pp. 210-12 (trial counsel's evidentiary hearing testimony)). Petitioner is not entitled to habeas relief on Ground Three.

Ground Four          "Defense Counsel was ineffective for not properly investigating and determining Pratt's mental competence at the time of the plea hearing, and his sanity at the time of the crime." (Doc. 1, p. 19).

Petitioner last claims trial counsel was ineffective for failing to investigate his competency at the time of the plea and sanity at the time of the murder. (Doc. 1, p. 19). The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 19; Doc. 22, pp. 36-38). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).

A.    Clearly Established Federal Law

The clearly established federal law governing this claim is set forth above.

B.    Review of State Court's Decision

The court presumes that the First DCA adopted the state circuit court's reasoning. The state circuit court utilized the *Strickland* standard, (Ex. H, pp. 246-47), and denied relief for these reasons:

> Defendant claims that although defense counsel filed a motion of intent to rely on an insanity defense and a motion to have Defendant's competency evaluated, counsel never pursued the motions.

> First, at the time that defendant entered his plea, as noted above, the Court performed a thorough colloquy to ensure that his plea was

entered freely, knowingly and voluntarily. This included questioning Defendant about his use of medications. Although Defendant stated that he was taking several medications, he also confirmed that he was "clear-headed." The Court asked Defendant several more questions to demonstrate that Defendant was alert to the date, time, and the circumstances. The Court concluded that Defendant was "alert and intelligent. That he understands the nature and the consequences of the charges against him and the significance of entering a plea." Therefore, the record reflects that Defendant was competent at the time that he entered his plea.

Next, Dr. James Larsen testified at Defendant's sentencing that he conducted "fairly complex" psychological evaluations of Defendant on August 19, 2005. He testified that he found defendant competent to proceed and also that insanity at the time of the offense would not have been a viable defense.

Clearly counsel considered an insanity defense preliminarily and concluded that it did not have merit. As Mr. Stopp testified at the evidentiary hearing in this matter, he did not pursue an insanity defense in this case because the "psych eval came back and said he was perfectly capable." Mr. Stopp also testified that Defendant "wasn't talking strangely, acting strangely, he seemed to understand – he's a very articulate young man, intelligent young man." Other than Defendant's strong desire not to challenge the charges against him, Mr. Stopp testified, "I didn't have any other indication that he needed to be psych evaled." Defendant is not entitled to relief on this claim.

(Ex. H, pp. 252-53) (footnotes omitted).

The state court's factual findings, including credibility determinations, are

amply supported by the record. Given these facts, a fairminded jurist could conclude

that counsel's performance was not deficient because counsel reasonably could have

determined that having petitioner's competency and sanity evaluated would have been a futile exercise. A fairminded jurist could also conclude that petitioner failed to establish a reasonable probability that the outcome of his criminal proceeding would have been different had counsel pursued expert opinions on those issues. Petitioner is not entitled to habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'"
*Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S.
at 327). The petitioner here cannot make the requisite showing. Accordingly, the
court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,
the court may direct the parties to submit arguments on whether a certificate should
issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation
by either party, that party may bring such argument to the attention of the district
judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the
judgment of conviction and sentence in *State of Florida v. Steven Wayne Pratt*,
Escambia County Circuit Court Case No. 2005-CF-2525, be DENIED.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 11th day of July, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.